[Cite as *State v. Walker*, 2016-Ohio-7314.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| STEVEN WALKER | : | Case No. 2016CA00076 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court
of Common Pleas, Case No. 2015-
CR-1118

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      October 11, 2016

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                    NICHOLAS SWYRYDENKO
Prosecuting Attorney                    P.O. Box 3952
Cuyahoga Falls, Ohio 44223

By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

*Baldwin, J.*

**{¶1}** Defendant-appellant Steven Walker appeals from the March 14, 2016 Judgment Entry of the Stark County Court of Common Pleas denying his Application for Leave to File a Delayed Motion for New Trial. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** The relevant facts, as taken, in relevant part, from this Court's Opinion in *State v. Stevens*, 5th Dist. Stark No. 2005-CA-00286, 2006-Ohio-6240, are as follows.

**{¶3}** Michael Cheek, Aubrey Williams, and Julius Edwards were longtime friends and also members of a Canton gang known as the "Northwest Shorb Block." On July 29, 2005, the three were hanging out with a fourth man, William Friedman, who was Cheek's cousin. The four spent the day together and were drinking when they made plans to go to a Canton bar called Brick City.

**{¶4}** Williams drove the four in a Buick Regal car belonging to Michael Cheek's mother. They decided to go to the Hall of Fame Fuel Mart to buy new t-shirts before they went to the bar. The Hall of Fame Fuel Mart is located at 704 Sherrick Road S.E., Canton. Aubrey Williams waited in the car, and the other three entered the store.

**{¶5}** The City of Canton is divided into roughly four gang "territories." The northwest part of the city is known as the territory of "Northwest Shorb Block." The northeast quadrant is known as the-home of the "Crypts" (sic). The southwest and southeast portions of the city are "Rated," or "Rated R," territory. The Hall of Fame Fuel Mart is located in what is considered to be "Rated" territory.

**{¶6}** Inside the store, Michael Cheek, Julius Edwards, and William Friedman encountered appellant Steven Walker. Appellant was at one of the store's two cash

registers, arguing with clerk Hussin Almuzerwi over the price of a shirt. A verbal confrontation ensued between appellant and Cheek's group. In the words of Julius Edwards, "We got out of the car and go in the store, we see Stevie, you know, in there hollering, talking about Rated." (1T. at 209). In Edwards' estimation, appellant was "letting it be known" that he was "Rated, flat-out."

{¶7} The group selected and paid for their t-shirts as the verbal back-and-forth with appellant continued. The tension escalated. Edwards described appellant as relentlessly baiting the three: "he's still walking up on it." (1T. at 211). At this point, Michael Cheek had enough and told Edwards that he was going to hit appellant. Cheek proceeded to strike appellant, knocking him into a candy rack. Appellant fell to the ground.

{¶8} Cheek, Friedman, and Edwards hurried out of the store. Edwards looked back at appellant and saw him reaching for something. Clerk Hussin Almuzerwi also saw appellant reach for something at his waist. Julius Edwards described what he saw as a "burner," a gun or pistol. Cheek, Edwards, and Friedman took off running. Cheek ran in the direction of the Southeast Community Center, and Edwards and Friedman ran toward the car. (1T. at 211).

{¶9} Julius Edwards testified that appellant ran out of the store "with the burner already out" and fired at least four to five times at Michael Cheek as he fled. Cheek fell to the ground. Appellant pointed the gun at Edwards and Friedman; Edwards said that the gun "clicked." Appellant got into his own car and left the scene. (1 T. at 211; 213-215; 218).

{¶10} Edwards admitted that he is a member of the Shorb Block gang but claimed that Williams, Cheek, and Friedman were not. He also claimed not to know whether

appellant was affiliated with any gang. Julius Edwards did identify appellant as the shooter. He stated that appellant had people "with" him, presumably in his car. (1T. at 215; 216-217). Edwards also testified that no one in Michael Cheek's group that night had a gun.

{¶11} Aubrey Williams watched the shooting from the driver's seat of the car. Cheek, Friedman, and Edwards had been in the store only about five minutes when Cheek came running out and turned left. He was followed by Edwards and then Friedman, who turned right, toward the car. Williams saw appellant come out after the group, pointing a gun at Cheek.

{¶12} Cheek got about fifteen or twenty feet from the door of the store when appellant fired the gun and Cheek dropped to the ground. Williams recalled that appellant fired the gun more than once but he was not sure how many times. Williams saw appellant get into a black Taurus and drive away. Williams testified that no one in the Buick Regal that night had a gun. He identified appellant as the person who shot Michael Cheek, and testified that there was no doubt in his mind that appellant was the shooter.

{¶13} Both Williams and Edwards described the final moments of the life of Michael Cheek. They ran to their friend as he lay on the ground. Cheek told them that he couldn't feel his legs. Williams, Edwards, and Friedman tried to pick up Cheek in an attempt to carry him to the car, but bystanders advised them not to move him. Cheek stated that he could not feel his body anymore. Williams placed his hand under Cheek's head as Cheek coughed and his eyes rolled back into his head.

{¶14} Emergency medical personnel and police arrived. Patrolman Michael Nordick lifted Cheek from the large pool of blood in which he lay, and noted an entrance wound in his back.

{¶15} Cheek was transported to Aultman Hospital. Edwards and Williams also went to Aultman and were told that Cheek was dead. Patrolman Nordick questioned Edwards at the hospital, and Edwards told him that appellant was the shooter.

{¶16} At the conclusion of the jury trial and the end of deliberations, appellant was found guilty as charged. As memorialized in an Entry filed on October 31, 2005, the trial court sentenced appellant to an aggregate prison term of eighteen years to life.

{¶17} Appellant then appealed. Pursuant to an Opinion filed on November 27, 2006 in *State v. Stevens*, 5th Dist. Stark No. 2005-CA-00286, 2006-Ohio-6240, this Court affirmed the judgment of the trial court.

{¶18} Subsequently, on November 2, 2015, appellant filed an Application for Leave to File Delayed Motion for New Trial. Appellant argued that there was newly discovered evidence in his case and that he was unavoidably prevented from discovering the same prior to filing his application. The newly discovered evidence was an affidavit from the victim's sister, Shyeaka Sianna Ball, and an affidavit from Julius Edwards. Ball, in her June 19, 2015 affidavit, stated that she was ten years old when her brother was killed and that a couple of days after he was killed in 2005, while at a gathering at her mother's house, she heard Julius Edwards state "I don't know how I'm going to look their family in the face and tell them that I shot my best friend." Ball, in her affidavit, further stated that Julius Edwards said that he accidentally shot and killed her brother and that she tried to tell her mother, but was told to mind her own business. Ball also stated that

she had recently contacted appellant's sister through Facebook to let her know what Ball had witnessed back in 2005.

{¶19} Julius Edwards, in his February 1, 2013 affidavit, stated that he testified falsely at appellant's criminal trial and was threatened and coerced by the Prosecution into testifying falsely at trial. He stated that the shots did not come from appellant, but from the entrance to the store, and that appellant never had a gun. Edwards further stated that he was jealous of appellant and missed the victim, who was his best friend, and "decided incorrectly that [appellant] should pay for the killing."

{¶20} On March 9, 2016, appellant filed a request for a hearing on his application and/or for a ruling on the same. The trial court, as memorialized in a Judgment Entry filed on March 14, 2016, denied appellant's motion.

{¶21} Thereafter, on March 31, 2016, appellee filed a reply to appellant's Application for Leave to File Delayed Motion for New Trial. Pursuant to a Judgment Entry filed on April 15, 2016, the trial court overruled appellant's application.

{¶22} Appellant now raises the following assignment of error on appeal:

{¶23} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL WITHOUT A HEARING, AND THUS DENIED APPELLANT HIS DUE PROCESS RIGHT TO REVIEW OF THE SUBSTANTIVE AND LEGAL MERITS OF A MOTION FOR NEW TRIAL.

I

{¶24} Appellant, in his sole assignment of error, argues that the trial court erred in denying his Application for Leave to File Delayed Motion for New Trial without a hearing. We disagree.

**{¶25}** Crim.R. 33 governs new trials. A motion for a new trial made pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court, and may not be reversed unless we find an abuse of discretion. *State v. Schiebel,* 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). An abuse of discretion implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987).

**{¶26}** Crim.R. 33 states, in relevant part, as follows:

(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:…

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

**{¶27}** Pursuant to Crim.R. 33(B):

Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by

jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

**{¶28}** "[A] party is 'unavoidably prevented' from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence." *State v. Walden,* 19 Ohio App.3d 141, 145–146, 483 N.E.2d 859 (10th Dist. 1984).

**{¶29}** To warrant the granting of a motion for a new trial on the ground of newly discovered evidence, it must be shown that "the new evidence (1) discloses a strong probability that it will change the result of a new trial if granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to

former evidence; and (6) does not merely impeach or contradict the former evidence." *State v. Petro,* 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

**{¶30}** Appellant, in the case sub judice, argued that he had newly discovered evidence that would warrant a new trial. As is stated above, appellant supported his application with the June 19, 2015 affidavit of Shyeaka Sianna Ball, and the February 1, 2013 affidavit from Julius Edwards. As noted by appellee, with respect to Edwards' affidavit, neither the affidavit nor appellant's application explains how the affidavit was prepared, what lead to its preparation years after appellant's conviction was affirmed, or how and when it ended up in appellant's possession.

**{¶31}** While Julius Edwards' affidavit was dated February 1, 2013, appellant did not file his application until November 2, 2015. Appellant, in his application, stated that Edwards' affidavit, standing alone, was not sufficient evidence to warrant the granting of a new trial, but argues that such affidavit, taken in conjunction with the June 19, 2015 affidavit of Shyeaka Sianna Ball, does warrant a new trial.

**{¶32}** As an initial matter, we note that appellant does not explain why he waited for over five months after obtaining Ball's affidavit to file his application. Moreover, we find that the two affidavits contradict each other. While Ball, in her affidavit, stated that she heard Julius Edwards state in 2005 that he had shot and killed Michael Cheek and that the shooting was accidental, Edwards, in his affidavit, does not accept responsibility but rather points to some unknown and unnamed gunman. As noted by appellee, Ball's later affidavit destroys the credibility of Edwards' earlier affidavit and the credibility of Ball's affidavit is destroyed by Edwards' affidavit.

**{¶33}** Moreover, both affidavits are contradicted by the trial evidence, which is set forth above. There was testimony that Hussin Almuzerwi, the store clerk saw appellant reach for something at his waist. Aubrey Williams, a witness, testified that he saw appellant run out of the store. He identified appellant as the person who shot Michael Cheek, and testified that there was no doubt in his mind that appellant was the shooter. At trial, Julius Edwards' testimony corroborated Williams' version of events and was consistent with the statement that he gave to police on July 30, 2005, a copy of which was attached to appellee's March 31, 2016 reply. In his statement to police, Edwards identified appellant as the shooter.

**{¶34}** Based on the foregoing, we find that the trial court did not err in denying appellant's Application for Leave to File Delayed Motion for New Trial without a hearing. The trial court's decision was not arbitrary, unconscionable or unreasonable. We find that appellant failed to show by clear and convincing evidence that he was unavoidably prevented from the discovery of the evidence upon which he relied or that the new evidence disclosed a strong probability that it would change the result of a new trial if granted.

**{¶35}** Appellant's sole assignment of error is, therefore, overruled.

{¶36} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Farmer, P.J. and

Hoffman, J. concur.